# McManamon, Appellant, v. Hanover Township.

*Negligence—Contributory negligence—Municipalities—Streets and highways—Pedestrian—Fall over embankment—Choice of two ways—Death—Circumstantial proof.*

1. A person who uses a street or highway that is thrown open for public travel, knowing at the time that there is a safer route which he may take to reach his destination, is not necessarily guilty of negligence because he does not take the safer route. It is only when the danger is so great and apparent that an ordinarily prudent person would regard it as dangerous, and therefore avoid it, that a trial court can say, as matter of law, that the person using the more dangerous route is guilty of contributory negligence. If the alternative route has dangers of its own, and the dangers of the route actually taken are not so great and obvious as to deter the general public and ordinarily prudent and careful people from using it, the question of the contributory negligence of a person injured in using it is a question for the jury.

2. In an action against a township to recover damages for the death of plaintiff's husband, who was killed by falling over an unguarded vertical cut on the main street of defendant township, the case is for the jury where there is evidence to show that there was a footpath on top of the cut about 200 feet in length and about six feet in width

running up from and back to the level portions of the street; that this path had been open to the public and used as a way for travel or sidewalk by the residents of the community for a long period of years; that the decedent had lived with his family for about three years in a house on the top of the cut and had been in the habit of using the pathway to and from his home; that the path was the usual way for the people in the community to reach the houses on the embankment; and that the only other way to the home of the decedent was by a roundabout course of nearly twice the distance, used by wagons with heavy loads, much of it over unpaved, unopened and unlighted streets and alleys, which course, for these reasons, was beset by its own dangers and was not the one customarily used by pedestrians for the purpose of reaching houses on the cut.

3. In such a case the fact that no one saw the decedent fall and that, therefore, the manner of the accident could only be determined by inferences from the known facts is not sufficient to prevent a recovery where the plaintiff introduces evidence tending to show that on the night of the occurrence the decedent left his home at about a quarter of nine o'clock; that he was seen by a friend returning to his home by way of the path over the embankment a half hour afterwards, and was found dead at the foot of the embankment ten or fifteen minutes after that; that the position and condition of his body plainly indicated that he had broken his neck by falling over the embankment into the cut; and that upon the night of the accident there was snow and ice upon the ground in the vicinity; and where there is no evidence to show that the decedent was in other than a sober condition.

*Negligence—Contributory negligence—Burden of proof.*

4. The plaintiff in a negligence case is not required to prove negatively that he himself was not guilty of any negligence which contributed to the result. That burden is on the defendant, unless the evidence adduced by the plaintiff discloses contributory negligence.

Argued April 12, 1911.   Appeal, No. 31, Jan. T., 1911, by plaintiff, from judgment of C. P. Luzerne Co., Oct. T., 1908, No. 293, on verdict for defendant by direction in case of Mary McManamon v. Township of Hanover. Before Fell, C. J., Mestrezat, Potter, Elkin and Moschzisker, JJ.   Reversed.

Trespass to recover damages for death.   Before Ferris, J.

The facts appear in the opinion of the Supreme Court.

The court directed a verdict for the defendant and judgment thereon.   Plaintiff appealed.

*Errors assigned* were in directing a verdict for the defendant.

*Thomas F. Farrell*, with him *S. J. Strauss*, for appellant.—Under the evidence it was properly for the jury to say whether the defendant was guilty of negligence in maintaining in the highway the unguarded cut immediately parallel to the footway upon which McManamon was walking when he fell to his death: Forker v. Sandy Lake Borough, 130 Pa. 123.

Under the evidence it was properly for the jury to determine the question of contributory negligence on the part of the deceased, (a) whether he was justified in using the footway at night, and (b) whether in so using it he was in the exercise of due care on the night in question: Scranton v. Dean, 2 W. N. C. 467; Allen v. Willard, 57 Pa. 374; Wall v. Pittsburg, 205 Pa. 48; Coolbroth v. R. R. Co., 209 Pa. 433.

We submit that in all the cases in which the rule of choice of ways has been enforced the ways must be both reasonable and safe, and they are usually parallel to each other.   The doctrine has never been applied to cases like that at bar: Allen v. Warwick Twp., 9 Pa. Superior Ct. 507; Haven v. Bridge Co., 151 Pa. 620; Purcell v. Riebe, 227 Pa. 503.

*Abram Salsburg*, with him *Peter J. McCormick*, for appellee.—A person who knows a defect on a highway and voluntarily undertakes to test it when it could be avoided, cannot recover against the municipal authorities for losses incurred through such defect: Hill v. Tionesta Twp., 146 Pa. 11; Forks Twp. v. King, 84 Pa. 230; Haven v. Bridge Co., 151 Pa. 620.

The degree of contributory negligence is not an inquiry; any negligence on the part of the plaintiff will bar his re-

covery: Monongahela v. Fischer, 111 Pa. 9; Erie v. Magill, 101 Pa. 616.

OPINION BY MR. JUSTICE MOSCHZISKER, July 6, 1911:

On February 1, 1908, at about 9:30 o'clock in the evening Patrick McManamon was killed. His widow brought an action on behalf of herself and the children of the deceased to recover damages for the loss of his life, claiming that his death was due to the negligence of the defendant township. The court below gave binding instructions for defendant, judgment was entered accordingly, and the plaintiff has appealed. The sole question is, Was there sufficient evidence to justify the submission to the jury of the issues as to the negligence of the defendant and the contributory negligence of the decedent?

Had the evidence been submitted and had the jury taken a view favorable to the plaintiff, drawing the inferences contended for by her, they might have reached the following conclusions: That the decedent was killed by falling over an unguarded vertical cut on the main street of the defendant township; that this cut had existed in its unguarded state for some years; that it was about twelve feet in height at the point where the decedent fell; that on the top of the cut there was a footpath about 200 feet in length running up from and back to the level portions of the street; that this path had been open to the public and used as a way for travel or sidewalk by the residents of the community for a long period of years, even prior to the date of the cut; that at the point of the accident the path was about six feet in width from the fence line to the edge of the cut; that the street in question was plotted of a width of fifty feet, and actually measured from fence line to fence line forty-nine feet, the roadway between the curbs being thirty-three feet, and the curb being set "right up against the bank" of the cut; that the decedent had lived with his family for about three years in a house on the top of the cut and had been in the habit of using the pathway, to and from his home;

that the only other way to the home of the decedent was by a roundabout course of nearly twice the distance, used by wagons with heavy loads, much of it over unpaved, unopened and unlighted streets and alleys, which course for these reasons was beset by its own dangers and was not the one customarily used by pedestrians for the purpose of reaching the houses on the cut; that on the night in question the decedent left his home at about a quarter of nine o'clock; that he was seen by a friend returning to his home by way of the path over the embankment a half hour afterwards, and he was found dead at the foot of the embankment ten or fifteen minutes after that; that the position and condition of his body plainly indicated that he had broken his neck by falling over the embankment into the cut; that upon the night of the accident there was snow and ice upon the ground in the vicinity; and that there was no evidence to show that the decedent was in other than a sober condition. No one saw the decedent fall, and how the accident happened can be determined only by inferences to be drawn from the known facts. As before stated, the jury might have found the facts as we have outlined them, and hence it could not be said as a matter of law that the defendant township was not guilty of negligence in failing to guard this vertical cut on a populated main street.

The remaining question is, Under the circumstances, could it be ruled as a matter of law that the decedent was guilty of contributory negligence in using this unguarded path along the edge of the cut? The path was the usual way for the people in the community to reach the houses on the embankment, and the mere fact that there was another way, or that the way chosen had points of danger which must have been known to the decedent, would not be enough necessarily to convict him of contributory negligence.

"A pedestrian in a city on a dark night well acquainted with the unsafe condition of the sidewalk, is not guilty of contributory negligence in taking it as the direct way to

his home instead of some other way also unsafe, if he acted with that care with which a prudent man should act; and this is a question of fact for the jury:" 5 Thompson on Negligence (2d ed), 734, sec. 6273. In Altoona v. Lotz, 114 Pa. 238, the defects in the sidewalk were well known to the plaintiff at the time he was injured, and the defense was that he had failed to show a case clear of contributory negligence, it being suggested there, as it is in the present case, "that the plaintiff could have conveniently found a safer way" to reach his home. We held the defense insufficient and affirmed a judgment for the plaintiff. In Musselman v. Hatfield Borough, 202 Pa. 489, reversing a judgment of nonsuit, we said: "She (the plaintiff) knew of 'the break on each side of the board walk and was watching for it, but the night being dark she did not see it, and consequently stepped outside the board walk and fell. There was one other way by which she could have reached her home. . . . Defendant averred contributory negligence on the part of the plaintiff, in choosing for her way home a pavement which she knew was unsafe. . . . It is often difficult to apply the law to the varying facts of the different cases and say which case is for the court and which for the jury, but here the risk was relative; whether she should in the exercise of care, have walked in the middle of the street, or have gone by the turnpike, or have walked on Market street pavement . . . . depended on a comparison of risks." In Steck v. Allegheny, 213 Pa. 573, we said: "A person who uses a street or highway that is thrown open for public travel, knowing at the time that there is a safer route which he may take to reach his destination . . . . is not necessarily guilty of negligence because he does not take the safer route. It is only when the danger is so great and apparent that an ordinarily prudent person would regard it as dangerous, and therefore avoid it, that a trial court can say, as matter of law, that the person using the more dangerous route is guilty of contributory negligence. If the alternative route has dangers of its own, . . . . and the dangers of the route

actually taken are not so great and obvious as to deter the general public and ordinarily prudent and careful people from using it, the question of the contributory negligence of a person injured in using it is a question for the jury."

It is only where the facts plainly show that the injured person had a choice of two ways, one of which was safe and the other of which was subject to risks and dangers, and that he voluntarily chose the latter, that it can be said as a matter of law that he was guilty of contributory negligence. Such were the cases of Hill v. Tionesta Twp., 146 Pa. 11, and Purcell v. Riebe, 227 Pa. 503, depended upon by the defendant.

It is necessary for one to observe all the precautions required of an ordinarily prudent person before he can hold another for an act of alleged negligence, but positive evidence that he observed such precautions is not required: Lehigh Valley R. R. Co. v. Hall, 61 Pa. 361. "Generally, the direction is that the jury is to judge from the surrounding circumstances, whether the plaintiff exercised the caution which ought to mark the conduct of a prudent person:" Beatty v. Gilmore, 16 Pa. 463. "As the love of life and the instinct of preservation are the highest motives for care in any reasoning being, they will stand for proof of care until the contrary appears:" Cleveland & Pittsburg R. R. Co. v. Rowan, 66 Pa. 393. "It was never intended . . . . that the plaintiff . . . . must . . . . prove negatively that he himself was not guilty of any negligence which contributed to the result:" Bradwell v. Pittsburg, etc., Ry. Co., 139 Pa. 404. "That burden is on the defendant, unless the evidence adduced by her (the plaintiff) discloses contributory negligence:" Coolbroth v. Penna. R. R. Co., 209 Pa. 433. "From the fact that a person, injured upon a defective highway, was so well acquainted with its condition that he might be able to pass over it safely by the use of ordinary precaution, it does not necessarily follow, as a matter of law, that he was conclusively guilty of contributory negligence; the

circumstances of the case may make this a question for the jury:" Forker v. Sandy Lake Borough, 130 Pa. 123.

We find two Pennsylvania cases in which death resulted from an unseen fall and a recovery was allowed. First, Allen v. Willard, 57 Pa. 374, where we said: "That he fell into the pit . . . ., thereby breaking his neck, and that the excavation was unguarded at the place where he fell . . . . is without contradiction or doubt. But it is argued that his fall is not accounted for, and that the fact that his death was caused solely by the negligence of the defendant is not established by sufficient evidence. . . . Now all of these facts certainly tend to prove that Willard lost his life by falling accidentally into this open unprotected pit. . . . The natural instinct which leads men in their normal senses to avoid injury and preserve life is an element of evidence. In all questions touching the conduct of men, motives, feeling and natural instincts are allowed to have their weight, and to constitute evidence for the consideration of courts and juries. Adding these to the circumstances of this case, we cannot say that the evidence was insufficient to go to the jury." Next, in Scranton v. Dean, 2 W. N. C. 467, "The body of Dean was found below a bridge along the side of which there was no fence; there being no evidence of the manner or circumstances of his death: Held, that the presumption of law is, in the absence of proof to the contrary, that the deceased exercised ordinary care." We there said, "The strain of the case . . . . fell upon the manner of the accident, leaving the question one of probability whether Dean fell over the wall or abutment by accident and whether he contributed to the fall by any negligence of his own. These were questions to be decided by the jury from the circumstances attending the place where the body was found, its position and condition, and from the character, habits and general conduct of the man himself. . . . It is for them to weigh the probabilities of an accidental fall as Dean went home, the darkness of the night, his knowledge of the way, the effect of a blunder,

or a misconception of his position as he was entering upon the abutment, the probable condition of his senses, his instinct of self-preservation, and all the circumstances attending the place where he was found." Also see Ferry v. Phila. R. T. Co., decided at this term, and authorities there cited.

We conclude that there was enough in the evidence produced to justify the submission of the issues to the jury and that error was committed in giving binding instructions for the defendant.

The assignments are sustained and the judgment is reversed with a venire facias de novo.