## BELL v. SHOFF.
### No. 5782.

Circuit Court of Appeals, Third Circuit.
April 6, 1937.

BUFFINGTON, Circuit Judge, dissenting.

J. Webster Jones, of Philadelphia, Pa., for appellant.

Frank A. Harrigan and John R. K. Scott, both of Philadelphia, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from a judgment of the District Court for the Eastern District of Pennsylvania. In a prior opinion we reversed and directed that judgment be entered for the defendant. Bell v. Schoff, 81 F.(2d) 909. The case is now before us upon rehearing.

The plaintiff contends that the judgment of the District Court should have been affirmed because there was substantial evidence upon which the verdict of the jury in her favor could be based. We are guided by the rule that on an appeal from a judgment and verdict for a plaintiff in a negligence case, all the relevant evidence and inferences from the evidence must be viewed in a light most favorable to the injured person, and must be taken as true; all such unfavorable evidence or inferences must be rejected. Frank v. Reading Co., 297 Pa. 233, 146 A. 598. We summarize the testimony. The plaintiff's husband, Bell, was struck and killed by a car driven by the defendant. The accident occurred at the intersection of Baltimore Pike with Shadeland avenue, also known as Burholme road,

in Delaware county, Pa. Shadeland avenue leads into Baltimore Pike at the left or south side but does not continue on the right or north side. It forms a "T" crossing. The crossing is illuminated by two arc lights. A blinker gives warning of the intersection. Traveling west on Baltimore Pike there is an unobstructed view of the intersection for 325 feet. The night of the accident was dry and clear. It appeared from the evidence that the defendant, accompanied by a friend to whom he was talking, drove west on the right-hand side of Baltimore Pike. Bell was crossing from the left-hand side of the Pike and leaped for the pavement on the right-hand side but while leaping was struck and thrown up on the radiator of the defendant's car. The car traveled 75 feet after the brakes were applied and for about 10 to 15 feet of this distance it swayed from side to side of the road. The impact was sufficient to drive one of the shoes off Bell's foot. The body was badly mutilated. The radiator and the fan back of the radiator were crushed back.

We think that the evidence was such that the jury could find that the defendant operated his car at an excessive rate of speed and was therefore negligent. The learned trial judge left the question of the negligence of the defendant, and the contributory negligence of the deceased to the jury. We deem this to have been entirely correct. The rule in Pennsylvania is that if part of the testimony indicates that the deceased was guilty of contributory negligence, and another portion that he was not, then the question is for the jury's determination. Lausterer v. Dorney Park Coaster Co., 100 Pa.Super. 33.

The presumption, if any, is that the deceased exercised due care rather than that he was guilty of contributory negligence. In Tomlinson et al. v. Northwestern Electric Co., 301 Pa. 72, 151 A. 680, the court held that where a husband and wife were killed while driving a car over a street railway crossing and there was no direct evidence bearing on the accident, it would be presumed that they exercised due care by stopping, looking, and listening before entering on the tracks. See, also, Frank v. Reading Co., supra; McManamon v. Hanover Tp., 232 Pa. 439, 81 A. 440, and an opinion of our own Circuit in Abood v. Turner (C.C.A.) 72 F.(2d) 880.

We conclude that the duty of determining the issue of contributory negligence was properly delegated to the jury and that the record justifies a finding that the deceased was not guilty of contributory negligence. It necessarily follows that we erred in our former ruling.

Numerous errors were assigned to the charge of the court and the conduct of the trial, but we find no error of such a substantial nature as to require a reversal.

Our decision as set forth in opinion filed January 27, 1936, is vacated and set aside, and the judgment of the court below is affirmed.

BUFFINGTON, Circuit Judge (dissenting).

As plaintiff offered all the evidence and defendant none, I assume such evidence was true. Indeed, by offering it plaintiff committed herself to its truth. The only persons who saw the accident were defendant and a companion sitting beside him. To prove her case, plaintiff offered the statement made by defendant at the coroner's inquest. Moreover, as she failed to call the companion witness, I am justified in assuming his testimony would agree therewith. Now what was the defendant's testimony thus accredited by the plaintiff's offer thereof?

"A. The night the accident happened I met Mr. Geibel in this fraternity house and we drove coming out toward Media. We came out Baltimore Pike and were driving along conversing wtih one another. We were coming out Baltimore Pike and after leaving Lansdowne. We were proceeding on the right hand side of the road. I saw this crossing and I slowed up.

"Q. Is there a light at that crossing? A. A blinker. There were no cars coming toward us, in back or to the right or left. I started to resume my speed, going about thirty-three miles an hour, just as I came out from under the light to enter on the bridge, I saw a figure running, coming from my left. This figure was very close to the car and at the same time I saw him I attempted to turn the car away from him to the right but couldn't on account of the pavement on the bridge so I immediately applied the brakes. At the same time he leaped in the air and he hit right on the top of the radiator and by that time the car was slowing down and we were carrying him.

"Q. How far do you suppose you carried him? A. About forty-five (45) feet.

"Q. How fast were you going? A. About thirty-five (35) miles an hour. Just as we came to a stop he toppled off."

"Q. Was he running directly across the Baltimore Pike? A. Running from our left. He gave a jump and lit up on the radiator.

"Q. You had your headlights burning full? A. They were on full power."

Under the Pennsylvania regulation, the permissible speed was 35 miles an hour. The proof was that the night was clear. The defendant's car had both headlights burning and they could be seen for from 325 to 300 feet from the crossing. The deceased started to run in the face of the lights of the car, which was so close that, run as he did, the car caught him. These facts—the visibility of the approaching light for more than 300 feet, the legal speed, the car on the right side of the road, the driver slowing up for the crossing, all proved by the plaintiff's proofs, with no contradiction by any one who saw the accident, the deceased, impelled to run by the nearness of the car and trying to cross before it—I accept as true. Because I am convinced that to allow recoveries in the face of such palpable contributory negligence is to encourage pedestrians crossing main thoroughfares to take needless and reckless risks, I am constrained to note a dissent.