Davies *v.* Klinman et ux., Appellants.

Argued October 9, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Glenn A. Troutman,* with him *Samuel M. Sharkis,* for appellants.

*Charles W. Sweeney,* for appellee.

OPINION BY ROSS, J., January 8, 1948:

This is an action in trespass to recover for injuries sustained by a pedestrian who fell on an ice and snow covered sidewalk of a property owned and occupied by the defendants. After a jury returned a verdict for the plaintiff, the lower court refused the defendants' motions for judgment n. o. v. and for a new trial and they have taken this appeal.

In support of their motion for judgment n. o. v., the defendants contend not only that the plaintiff was contributorily negligent but that there was no proof of negligence on their part.

The accident happened about 10:45 a.m. on January 24, 1946, when the plaintiff, while walking on Indian Queen Lane in Philadelphia, fell and suffered injury. She testified that the pavement in front of defendants' property was "all full of ice and snow" and that in trying to avoid the "slippery parts" she tripped and fell "over ridges of ice", that there were three or four ridges "at least two and a half inches" in height. On direct examination, in response to the question "Did you notice these ridges before you fell?" she answered, "Just about as I got there, yes." On cross examination, she testified: Q. "When you noticed the ridges—did you notice them before you stepped on the ridge?" A. "No, not just before. I didn't know what it was until after I tripped." Q. "After you tripped, then you noticed where you fell?" A. "Yes, sure. I fell right on them."

Defendants contend that if the plaintiff saw the ridges and then stepped on them, she is guilty of negligence on the theory that one who, in broad daylight, walks into an obvious defect in a sidewalk is presumptively negligent, as stated in *Cox v. Scarazzo,* 353 Pa. 15, 44 A. 2d 294, at page 17; and that if she did not

see the ridges before she stepped on them, she should have as it was a clear day in broad daylight when she fell, citing, inter alia, *Davis v. Wilkes-Barre,* 286 Pa. 488, 134 A. 105, *Gryning v. Philadelphia,* 269 Pa. 277, 112 A. 448, and *Walberg v. Rocolene Refining Co.,* 340 Pa. 200, 16 A. 2d 390. In the *Davis* and *Gryning* cases, the pedestrians tested a known or clearly discernible dangerous icy condition upon the sidewalk when there was an alternate safer route. In the *Walberg* case, the plaintiff simply didn't look where he was going, he was looking ahead at a door and not where he was stepping. The legal principles relied upon by defendants are well settled but they are not applicable to the facts of this case.

If there was a conflict in plaintiff's testimony as to when she saw the ridges, it was for the jury to reconcile the seeming conflict and from their verdict they must have determined that she neither saw nor should have seen the ridges in time to prevent her injury and we cannot as a matter of law say otherwise. According to the testimony, the sidewalk—as well as the street— was "full of ice and snow", and when she fell the plaintiff was trying to avoid other dangerous parts of the sidewalk, the "slippery parts". No path was cleared through the snow and ice, there were no ashes on the sidewalk and no safer route was shown to be available to the plaintiff in reaching her physician's office about a block away, which was her destination. Whether she used due care under the circumstances was for the jury.

In support of their position that negligence on their part was not shown, the defendants contend that it was not shown that they had either actual or constructive notice of the alleged dangerous condition of the sidewalk. Actual notice was not shown or attempted to be shown. To establish constructive notice, the plaintiff relied primarily upon the testimony of Frank H. Ahearn, meteorologist at the Philadelphia Weather Bureau, who from his records testified that it began to snow at 5:20 p.m. on January 20, "changed to sleet at 11:10 p.m. of the 20th, and that sleet changed to a freezing rain at

12:30 a.m. of the 21st. That freezing rain ended at 3:15 a.m. of the 21st. Still on the 21st we had sleet and rain from 10 a.m. to 11:20 a.m. After that rain only fell until 1:40 p.m." and that from 1:40 p.m. until several hours after the plaintiff fell it was clear and the following temperatures were recorded: January 22, highest 34 degrees, lowest 18; January 23, highest 30, lowest 16; and at 6 a.m. on January 24, a few hours before the accident, the temperature was 21. From this testimony the jury may very well have found that the dangerous condition of the sidewalk existed for more than two days before the plaintiff fell and that the defendants who occupied the property should have known of the condition of the sidewalk and remedied it.

The verdict in plaintiff's favor is a finding that she was free from contributory negligence and that the defendants were negligent (*Weismiller v. Farrell*, 153 Pa. Superior Ct. 366, 34 A. 2d 45) and the evidence, read in the light most favorable to the plaintiff and giving her the benefit of every fact and inference of fact which may reasonably be deduced therefrom, supports the verdict. Consequently, the action of the lower court in refusing the defendants' motion for judgment n. o. v. must be sustained.

In support of their motion for a new trial, the defendants assign as error, inter alia, the trial judge's "excessive cross-examination and his expressed doubts as to the credibility" of two witnesses for the defendants. From our examination of the record, we are of the opinion that there is considerable merit in this complaint. However, since a new trial must be granted for other reasons, it is not necessary for us to determine that the defendants did not receive the fair and impartial trial to which they were entitled although we want to repeat what, speaking through Judge (later President Judge) BALDRIGE, we stated in *Com. v. Safis*, 122 Pa. Superior Ct. 333, 337, 186 A. 177: "We recognize that it is the duty of a judge, both in civil and criminal trials, to preside with entire impartiality and not take a too

active part in developing testimony or enter into discussions with witnesses. 'Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. . . . The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved': Com. v. Myma, 278 Pa. 505, 508, 123 A. 486."

The defendants' eighth assignment of error complains of the trial judge's charge to the jury and the eleventh assignment of the refusal of defendants' third point for instructions. Since these assignments involve the same question they will be considered together.

The portion of the charge to which defendants excepted is as follows: "If the ice and snow exist such a reasonable length of time to become a menace and you have actual knowledge of its existence which you must if it is on your pavement, you are responsible" and the point for instructions: "Before the plaintiff can recover, the ice must not only have accumulated a sufficient length of time to form ridges, but it must have been allowed to form and remain an unreasonable length of time after notice, actual or constructive".

In substance the court's charge is that the menace or dangerous condition of the sidewalk and defendants' responsibility for injuries resulting therefrom arose simultaneously whereas defendants' contention is that after notice that a menace had arisen, they had a reasonable time thereafter to remove the menace. There is merit in defendants' contention.

In *Green v. Hollidaysburg*, 236 Pa. 430, 84 A. 785, relied upon by defendants, the Supreme Court, at page 432, stated: "A municipality is not liable for an injury caused by the slippery condition of a pavement, resulting from natural causes such as the recent formation of ice, but it may be held liable where ridges of ice are *allowed to form and remain for an unreasonable time after notice actual or constructive.*" (Italics supplied.) It is apparent that the material part of defendants' point is taken practically verbatim from the above quotation

from the *Green* case. In defining the duty of reasonable maintenance of sidewalks, Judge HIRT in *Hulings v. Pittsburgh et al.,* 150 Pa. Superior Ct. 338, 28 A. 2d 359, at page 341, stated: " 'Reasonable maintenance' therefore, contemplates a *reasonable period of time* not only to charge the city with notice but to accomplish a *removal of the menace* to pedestrians." (Italics supplied.) In *Gerber v. Pittsburgh,* 343 Pa. 379, 22 A. 2d 729, at page 382, Mr. Justice DREW stated: "Clearly the city could not be held to be negligent until it had *notice,* whether actual or constructive, *of the dangerous condition, and had failed to remedy it within a reasonable time* thereafter: Beebe et al. v. Philadelphia, 312 Pa. 214." (Italics supplied.) Cf. *Taylor v. Philadelphia,* 138 Pa. Superior Ct. 194, 10 A. 2d 75.

The principle established by these and other cases that a municipality after *notice of a dangerous condition* of a sidewalk has a reasonable time *thereafter* to remove the danger would apply with equal force to the one primarily responsible, in this case the property owner in possession.

In *Whitton v. H. A. Gable Co.,* 331 Pa. 429, 200 A. 644, at page 431, the Supreme Court stated: "There is no absolute duty on the part of a landowner to keep his premises and sidewalks free from snow and ice at all times. These formations are natural phenomena incidental to our climate. . . . Snow and ice upon a pavement create merely transient danger and the only duty upon the property owner or tenant is to act within a reasonable time after notice to *remove it when it is in a dangerous condition.* . . . There is no liability created by a general slippery condition on sidewalks. It must appear that there were *dangerous conditions* due to ridges or elevations *which were allowed to remain for an unreasonable length of time . . ."* (Italics supplied.)

Defendants' eighth and eleventh assignments of error are sustained.

Judgment is reversed, and a new trial awarded.